IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL FLANAGAN,
*an individual*,
        Plaintiff,                      16cv1237
                                      ELECTRONICALLY FILED
        v.

MARTFIVE, LLC, *a Minnesota Limited
Liability Company doing business as*
HURRYCANE, LLC, ET AL.

        Defendants

**MEMORANDUM OPINION**

Presently before the Court is a Motion for Partial Judgment Summary filed by Defendants. Doc. no. 84. Plaintiff filed a Response and Brief in Opposition to the Motion (doc. nos. 89, 90). The matter is now ripe for adjudication.

**I.    Introduction**

Michael Flanagan ("Plaintiff") and his wife planned to attend a picnic on August 23, 2014. That day, Plaintiff asked his wife to purchase a HurryCane, a foldable, self-standing cane, for him from a Bed Bath & Beyond, Inc. ("BB&B") store in Bethel Park, Pennsylvania. Plaintiff did not read the HurryCane's packaging or instructions and left for the picnic minutes after his wife brought it home. As he descended steps with the HurryCane, he fell. He claimed that the HurryCane unintentionally folded and caused his fall.

Plaintiff brought this diversity action against businesses that made, supplied, advertised, or sold the HurryCane. These entities include HurryCane, LLC f/k/a ZOOMWORKS, LLC f/k/a martFIVE LLC, Marketing Architects, Inc., and BB&B (collectively the "Defendants"). The Defendants filed a Partial Motion for Summary Judgment (Docket No. 84) targeting the following claims in Plaintiff's amended complaint: breach of express warranty (contained within

counts IV and VIII), manufacturing defect (contained within counts II and VI), and failure to warn (counts III and VII). (Docket No. 43 at 9, 11, 14, 18, 20, 22). Because Plaintiff failed to produce sufficient evidence to create genuine issues of material fact requiring a jury trial on these claims, the Court will grant Defendants' Partial Motion for Summary Judgment.

**II.     Facts**

Before August 23, 2014, the day of the accident, Plaintiff had not: used a HurryCane; talked to anyone who used one; independently researched the product; or read any literature, reviews, or news articles about it. (Docket No. 92-1 at 44:22—45:16). The HurryCane piqued Plaintiff's interest because television advertisements showed that it could stand on its own. (Docket No. 92-1 at 44:6–13). On August 23, 2014, Plaintiff asked his wife to buy one for him at BB&B in Bethel Park. (*Id.* at 42:11–17; 43:18–44:2). He thought the HurryCane's self-standing ability would be helpful at a picnic he and his wife planned to attend that day. (*Id.* at 44:6–9). Plaintiff did not know if BB&B employees talked to his wife about the HurryCane or if she observed any HurryCane literature or advertisements while there. (*Id.* at pp. 46–47). Neither Plaintiff nor Mrs. Flanagan spoke to Defendants' employees about the HurryCane before August 23, 2014. (*Id.* at 47:17–48:7).

During his deposition, Plaintiff did not remember who removed the HurryCane from its package. (*Id.* at 49:17–18). He did not read anything on the HurryCane's box or any literature within its box and could not describe what its box looked like. (*Id.* at 50:7–50:12; 50:17–22). However, he recalled that the HurryCane could support 200 or 300 pounds. (*Id.* at 50:13–16). An assertion on its packaging states that the HurryCane "[w]ithstands up to 350 pounds." (Docket No. 92-3 at 1). Plaintiff admitted that he did not look at any warnings or instructions

before using his HurryCane. (Docket No. 92-1 at 51:20–52:1). Defendants' counsel asked why he did not look at the materials accompanying the HurryCane:

> Q: But the fact that you didn't read any warranties or instructions, was that because there wasn't [sic] any included, or you just chose not to look into it [sic]?
>
> A: Chose not to look into it.

(*Id.* at 52:9–13).

The Flanagans left minutes after Mrs. Flanagan brought home the HurryCane. (*Id.* at 54:1–7). Plaintiff first used his HurryCane as he left his house to go to a picnic. (*Id.* at 53:16–19). It appeared to be in good working order and without visible defects. (*Id.* at 53:5–10). Plaintiff, using his HurryCane, successfully traversed a walkway leading from the front of his house to two concrete steps. (*Id.* at 54:21–55:1). He then fell while walking down the concrete steps with his HurryCane. (*Id.* at 55:17–23). Plaintiff blamed the HurryCane for his fall because it "collapsed" when he placed it on the ground. (*Id.* at 63:20–64:7). However, he did not know if the HurryCane was broken, cracked, or missing parts after he fell while using it. (*Id.* at 65:14–19). Plaintiff's left patella fractured and his right patella ruptured due to his fall. (*Id.* at 71:7–10).

### III. Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Lamont v. New Jersey*, 637 F.3d 177, 181 (3d

Cir. 2011). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning there is sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *In re Lemington Home for the Aged*, 659 F.3d 282, 290 (3d Cir. 2011) (internal citations omitted).

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record— *i.e.*, depositions, documents, affidavits, stipulations, or other materials—or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) the non-moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). The moving party may discharge its burden by "pointing out to the district court" the "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[T]he nonmoving party bears the ultimate burden of proof" for the claim in question. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (quoting *Singletary v. Pa. Dept. of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001)).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Fed. R. Civ. P. 56(c)(1). When determining whether there are any genuine issues of material fact, all inferences should be drawn in favor of the non-moving party. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). In reviewing a motion for summary judgment, the Court does not make credibility determinations, and summary

judgment is "inappropriate when a case will turn on credibility determinations." *El v. Southeastern Pa. Transp. Auth.*, 479 F.3d 232 (3d Cir. 2007) (citing *Anderson*, 477 U.S. at 255).

IV. **Discussion**

   A. *Express-Warranty Claims*

Plaintiff's breach-of-express-warranty claims must be dismissed because no evidence shows that Defendants breached any express warranties. Pennsylvania recognizes three methods for sellers to make express warranties:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

13 PA. CONS. STAT. § 2313(a)(1–3).

Plaintiff did not show that the HurryCane fell below any expressly warranted standards. Plaintiff wanted a HurryCane because television advertisements showed that it could stand on its own. (Docket No. 92-1 at 44:6–13). He did not produce evidence that his HurryCane could not stand on its own. Plaintiff also remembered that the HurryCane had a weight limit. (*Id.* at 50:13–16). Its packaging indicated that it could "withstand[] up to 350 pounds." (Docket No. 92-3 p. 1 (emphasis removed)). However, Plaintiff failed to proffer evidence that his HurryCane could not hold 350, or fewer, pounds. Plaintiff adduced no evidence to indicate that his fall had anything to do with his weight, nor any evidence concerning his weight.

5

Likewise, there is no evidence that when his wife purchased the HurryCane, employees at BB&B talked to her about the HurryCane. Similarly, there is no evidence that she observed any HurryCane literature or advertisements. (*Id.* at pp. 46–47). Plaintiff did not mention any other statements on the HurryCane's qualities that could be construed as express warranties. The Court will therefore grant Defendants' motion for summary judgment as to the express-warranty claims in counts IV and VIII because no record evidence indicates that Plaintiff's HurryCane fell below any expressly warranted standards.

### B. *Strict-Liability Claims*

Defendants' remaining summary-judgment arguments focus on two of Plaintiff's strict-liability claims: manufacturing defect and failure to warn. The Supreme Court of Pennsylvania recently reaffirmed in *Tincher v. Omega Flex* that "Pennsylvania remains a Second Restatement jurisdiction" in the strict-liability context. 104 A.3d 328, 399 (Pa. 2014). The applicable Second Restatement section is 402(A). Under this section, a plaintiff must prove "that the product was defective, the defect existed when it left the defendant's hands, and the defect caused the harm." *Barton v. Lowe's Home Ctrs., Inc.*, 124 A.3d 349, 355 (Pa. Super. Ct. 2015) (citing *Riley v. Warren Mfg, Inc.*, 688 A.2d 221, 224 (Pa. Super. Ct. 1997)).

#### 1. Manufacturing Defect

Plaintiff's manufacturing-defect claims fail as a matter of law because he did not adduce record evidence showing that his HurryCane had a manufacturing defect. A manufacturing defect claim "has to do with the actual assembly of the [product] . . . and any problems during that assembly that may have contributed to" the accident. *Harsh v. Petroll*, 840 A.2d 404, 416 (Pa. Commw. Ct. 2003), *aff'd*, 887 A.2d 209 (Pa. 2005). Plaintiff confirmed that his HurryCane appeared to be in good working order, without visible defects, when he first used it. (Docket

No. 92-1 at 53:5–10). He also did not know if the HurryCane was broken, cracked, or missing parts after he fell while using it. (*Id.* at 65:14–19).

No expert testimony suggests that a manufacturing defect caused Plaintiff's fall or that his HurryCane deviated from its intended design. Because Plaintiff did not produce record evidence of a manufacturing defect, the Court will grant Defendants' motion for summary judgment as to his manufacturing-defect claims contained within counts II and VI.

### 2. Failure to Warn

Plaintiff's failure-to-warn claims also will not survive summary judgment because he did not produce sufficient evidence to create a genuine issue of material fact that the lack of warnings about the HurryCane's collapse risk was the proximate cause of his injuries. In failure-to-warn claims, "the plaintiff must show first that the hazardous condition of the product was a cause in fact of his injury, and then that the absence or inadequacy of warnings addressing that condition was the legal cause of his injury." *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 620 (Pa. Super. Ct. 1999). To establish causation, a plaintiff "must demonstrate that [he] would have avoided the risk had he . . . been warned of it by the seller." *Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995). Stated differently, a defendant may be liable in failure-to-warn claims "only when there is sufficient evidence that additional warnings or reminders may have made a difference." *Conti v. Ford Motor Co.*, 743 F.2d 195, 199 (3d Cir. 1984) (citing *Sherk v. Daisy-Heddon, A Div. of Victor Comptometer Corp.*, 450 A.2d 615 (Pa. 1982)). Pennsylvania law "presumes that warnings will be obeyed." *Davis v. Berwind Corp.*, 690 A.2d 186, 190 (Pa. 1997) (citing *Baldino v. Castagna*, 478 A.2d 807 (Pa. 1984)). To rebut that presumption, the defendant "must produce evidence that such a warning would not have been heeded." *Coward*, 729 A.2d at 621. If the defendant can do so, "the burden of production

shifts back to the [P]laintiff to produce evidence that he would have acted to avoid the underlying hazard had the defendant provided an adequate warning." *Id.*

The record reveals that Plaintiff would not have heeded a warning about the HurryCane's propensity to collapse. The Flanagans were in a hurry when Mrs. Flanagan gave Plaintiff the HurryCane. Plaintiff testified that he "[c]hose not to look into" whether any warranties or instructions were provided on the packaging. (Docket No. 92-1 at 52:9–13). They left just minutes after Mrs. Flanagan brought the HurryCane home. (*Id.* at 54:1–7). The above evidence rebuts the presumption that Plaintiff would have heeded a warning about the HurryCane's purported propensity to collapse.

Viewing the evidence in the light most favorable to Plaintiff, *Colkitt*, 455 F.3d at 201, the Court concludes that Plaintiff did not produce sufficient evidence for a reasonable jury to conclude "that additional warnings or reminders may have made a difference." *Conti*, 743 F.2d at 199. Although Plaintiff remembered that the HurryCane had a weight restriction, he did not divulge how or when he acquired that information. (Docket No. 92-1 at 50:13–16). He did not testify that he learned about the weight restriction by reading information on the HurryCane's box or in accompanying literature. If he would testify at trial that he recalled the weight restriction by reading the HurryCane's instructions and packaging, he would directly contradict his deposition testimony that he "[c]hose not to look into" its warnings or instructions. (Docket No. 92-1 at 50:7–50:12; 50:17–22; 51:20–52:1; 52:9–13). The jury would then have to speculate that Plaintiff would have heeded a warning placed on materials accompanying the HurryCane even though he testified under oath that he did not read these materials. "Mere speculation" is not enough to impose liability under a failure-to-warn claim. *Conti*, 743 F.2d at 198–99. Thus, under a standard of review favoring non-moving parties, the Court finds there is no genuine issue

8

of material fact regarding whether Plaintiff would have heeded a warning that the HurryCane could collapse. The Defendants are entitled to judgment as a matter of law on counts III and VII.

## V.     Conclusion

Based on the foregoing law and record, the Court will grant Defendants' partial motion for summary judgment. An appropriate Order will follow.

/s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record